UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK



------------------------------------------------------------X

RONALD LIPTON and BRETT LIPTON,

                      Plaintiffs,

-against-

JOHN WOOTON, KEVIN LANE, EDWIN
BREWSTER, THE TOWN OF WOODSTOCK,
TOWN OF SAUGERTIES, GREG HULBERT, Chief
of the Town of Saugerties Police Department, and
JOHN DOE, an unidentified Town of Saugerties
Police Officer.

                      Defendants.
------------------------------------------------------------X

U. S. DISTRICT COURT
N.D. OF N.Y.
FILED
JUN 03 2001

LAWRENCE K. BAERMAN, CLERK
ALBANY

Hmded. Summons Iss'd.
FIRST AMENDED for Town of
COMPLAINT Saugerties (ul.)
+ Hulbert, + John
Doe.

DEMAND TRIAL
BY JURY

00 CV 319 (LEK)(RWS)

### The Parties

1. At all times hereinafter mentioned plaintiffs were and remain residents of the County of Orange, State of New York.

2. At all times hereinafter mentioned, defendants John Wooton ("Wooton") and Kevin Lane ("Lane") were officers of the Police Department of the Town of Woodstock, County of Ulster, State of New York.

3. At all times hereinafter mentioned, defendant Edwin Brewster ("Brewster") was an officer and the Chief of the Police Department of the Town of Woodstock, County of Ulster, State of New York.

4. At all times hereinafter mentioned, the Town of Woodstock, New York, was, and continues to be, a municipality located within the County of Ulster and duly

organized and existing under the laws of the State of New York. Part of the operations of said municipality is the management and operation of a police agency known as the Town of Woodstock Police Department.

5. At all times hereinafter mentioned, the Town of Saugerties, New York, was, and continues to be, a municipality located within the County of Ulster and duly organized and existing under the laws of the State of New York. Part of the operations of said municipality is the management and operation of a police agency known as the Town of Saugerties Police Department.

6. At all times hereinafter mentioned, defendant Greg Hulbert ("Hulbert") was an officer and the Chief of the Police Department of the Town of Saugerties, County of Ulster, State of New York.

7. At all times hereinafter mentioned, defendant John Doe ("Doe") was an officer of the Police Department of the Town of Saugerties, County of Ulster, State of New York, whose identity is not known to the plaintiffs.

## Nature of Action and Jurisdiction

8. This is a civil action seeking compensatory and punitive damages against the defendants Wooton, Lane, Brewster, Hulbert and Doe for committing acts under color of law which deprived plaintiffs of rights secured under the Constitution and laws of the United States and particularly under the provisions of the First, Fourth, Sixth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly Title 42 of the United States Code, Sections 1981 and 1983.

9. Each and all of the acts of the defendants Wooton, Lane, Brewster, Hulbert and Doe were done by them in their individual capacities under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of New York and under their authority as police officers of the Town of Woodstock, New York, and Town of Saugerties, New York.

10. Jurisdiction is conferred on this Court by 28 USC 1331 and 1343.

### Plaintiffs' Statement of Claims

11. On February 12, 1999, Ronald Lipton, who was then attempting to locate one Paula Wrolsen, faxed a communication to Hulbert which included information concerning certain wrongful, anti-social and anti-Semitic behavior and characteristics of Paula Wrolsen's family members, including James Wrolsen who was then employed as an officer of the Town of Saugerties Police Department.

12. On February 14, 1999, at the Town of Saugerties Police Station, Ronald Lipton, in his continued attempt to locate and communicate with Paula Wrolsen, again informed Hulbert of the aforementioned behavior and characteristics of the Wrolsen family members and showed Hulbert a notarized letter and a note of Paula Wrolsen and played Hulbert a tape recording of a conversation of the Wrolsen family to corroborate the information.

13. The information conveyed by Ronald Lipton to Chief Hulbert, as it pertained to James Wrolsen, including references to the aforementioned letter and tape recording, contained matters of public concern, and Ronald Lipton's act of conveying such

information to Hulbert constituted speech protected by the First Amendment of the United States Constitution.

14. After Ronald Lipton's conversation with Hulbert concluded and Lipton had left the Town of Saugerties Police Station, plaintiffs traveled in their vehicle to the Town of Woodstock to continue their effort to locate Paula Wrolsen.

15. While plaintiffs were in the vicinity of Glasco Turnpike in the Town of Woodstock, they happened upon Wooton and sought his assistance. Ronald Lipton explained to Wooton that he was trying to locate Paula Wrolsen but that plaintiffs wanted no contact with the Wrolsen family. Ronald Lipton further explained to Wooton that he had just had a meeting with Hulbert wherein he had conveyed to Hulbert the aforesaid information about James Wrolsen's family's anti-Semitism by playing a tape recording containing expressions of the Wrolsens' hatred of Jews. Lipton also told Wooton that he had much worse tape recordings of John and James Wrolsen at home. Wooton then said, "You fucked Jim Wrolsen pretty good over there", and Lipton said that was not his intent, that he was an officer in two P.B.A.'s and that "what you have here is a very serious anti-Semitic situation." Wooton then gave plaintiffs directions that were purportedly to Wrolsen Road and plaintiffs went on their way.

16. Later that day, at or about 5:20 p.m., in the vicinity of Mill Stream Road in the Town of Woodstock, New York, plaintiffs were at a service station phone booth and Ronald Lipton was speaking on the phone with a Town of Saugerties police officer or dispatcher who was then informing Lipton that John Wrolsen, another brother of Paula

Wrolsen, had called the police stating that he wanted to sign a trespass complaint against Ronald Lipton but that such complaint had not yet been signed.

17. During and/or in the minutes leading up to or after the time that Lipton was engaged in the aforementioned phone conversation with the Saugerties Police Department, Doe was communicating over the radio with the Dispatcher of the Town of Woodstock Police Department and/or Wooton or Lane. In the course of these radio transmissions, Doe indicated that the Town of Saugerties police were anticipating a complaint being signed against the plaintiffs for trespass and that the Saugerties police wanted the Woodstock police to detain plaintiffs and then arrest them once the signed complaint was obtained.

18. Later during the aforesaid radio transmissions, Doe informed the Woodstock police that the trespass complaint had just been signed indicating that the Woodstock officers could then formally arrest plaintiffs.

19. Upon information and belief, the aforementioned radio transmissions were made by or at the behest of Hulbert in retaliation for Ronald Lipton's exercise of his free speech rights when he informed Hulbert about Wrolsen's anti-Semitic and racist conduct.

20. While Lipton's aforementioned phone conversation with the Saugerties police was still in progress, Wooton and Lane arrived at the service station in two police vehicles and said to Ronald Lipton, "I told you before that you fucked Jim Wrolsen by playing that tape; now his brother is going to fuck you with a trespass complaint for riding around that area. You're under arrest for trespass in Saugerties." Ronald Lipton

then told Wooton and Lane that he committed no trespass either in Saugerties or Woodstock. Ronald Lipton also told Wooton and Lane that the Saugerties dispatcher had told him that no complaint had been signed. Ronald Lipton asked Wooton and Lane how he could be under arrest for something he did not do, and how he could be placed under arrest for a trespass, which is a violation, which was not committed in their presence, without any warrant or complaint being signed. Wooton then said to Lipton, "What are you a Jew lawyer?" and Lipton replied, "I am Jewish, I am not a lawyer, but I am a retired police officer and I know I did not do anything in Saugerties or Woodstock to be arrested for, especially the illegal way you're doing it." Wooton then said, "You're right, asshole, so we'll find a reason to arrest you in Woodstock", and he put a gun to Ronald Lipton's head and said "shut your fuckin' mouth or I'll slam you to the ground."

21. Wooton and Lane then arrested plaintiffs using excessive force and without probable cause, warrant, legal process or any other right or privilege, and in retaliation for Ronald Lipton's having conveyed the aforementioned information about James Wrolson to Saugerties Police Chief Hulbert.

22. The trespass complaint referred to in the above radio transmissions (Exhibit A), was signed by a member of the Wrolsen family and charged the plaintiffs with a violation, and not a crime, which allegedly took place in Saugerties. Plaintiffs therefore were caused to be arrested by Hulbert and Doe, and arrested by Wooton and Lane in violation of New York Criminal Procedure Law § 140.10(1), which allows a police officer to make an arrest without a warrant only when he has reasonable cause to believe

that the subject has committed violation in his presence, and § 140.10(2), which provides that a police officer may arrest a person for a petty offense (such as the trespass charged against plaintiffs), pursuant to § 140.10(1), "only when . . . [s]uch offense was committed or believed by him to have been committed within the geographical area of such police officer's employment".

23. At the time of the arrest, Wooton and Lane searched through plaintiffs' vehicle and seized a Mossberg Model 500A 12 gauge shotgun lawfully belonging to plaintiffs and lawfully within plaintiffs' vehicle out of plain view.

24. The aforesaid search of plaintiffs' vehicle and seizure of plaintiffs' shotgun were performed by Wooton and Lane without probable cause, warrant, legal process or any other right or privilege.

25. Wooton and Lane then unlawfully and maliciously kept plaintiffs under constraints through the use of excessive force and transported plaintiffs to the Town of Woodstock Police Station.

26. After their arrival at the police station, and while plaintiffs were still in Wooton's and Lane's custody, Wooton unlawfully and maliciously executed documents falsely accusing plaintiffs of the offense of criminal possession of a weapon in the fourth degree, a misdemeanor, in violation of N.Y.S. Penal Law Section 265.01. Plaintiffs were then fingerprinted and photographed for this offense despite plaintiffs repeatedly telling Wooton and Lane that the shotgun in their possession was legally purchased and owned by them, that it had no aftermarket alterations, that it had a legal 18 ½ inch barrel, that

the receipt of purchase and registry were available for scrutiny, and that both plaintiffs belonged to a gun club in Newburgh. In front of plaintiffs Wooton and Lane agreed that it was legal and laughingly went ahead with the arrest, telling Ronald Lipton, "You fucked with the wrong police departments this time."

27. While still at the police station, Brett Lipton was strip-searched while chained to a wall in view of his father, and humiliated by having his penis touched by Wooton.

28. While still at the police station, Brett Lipton was denied food and access to the bathroom and was forced to urinate on himself. Ronald Lipton, who also was chained to the wall, was similarly denied access to the bathroom when needed, as well as his medication and food, despite pleas for same.

29. Sometime thereafter, while plaintiffs were still chained to the wall, Brewster entered the station and conferred with Wooton and Lane. Ronald Lipton then asked to speak with Brewster and was brought into Brewster's office, at which time the aformentioned letter of Paula Wrolsen was shown to Brewster and the aforementioned tape recording of the Wrolsen family was played to him. Ronald Lipton explained to Brewster that plaintiffs' arrests were false and illegal and then Brewster stood up and asked Lipton, "Did you actually have the balls to play this fucking tape to Greg Hulbert and show him this letter, because I know you did." Lipton stated that he did. Brewster then measured the shotgun himself in front of Wooton and Lane and, laughing with them, said, "Yeah, 18 ½ inches, looks legal to me, too. Make it a felony arrest instead of a misdemeanor. Change it to criminal possession 3rd, reprint them both and let's send him

and his fucking son to jail with felony bail." Plaintiffs were then re-fingerprinted and processed on the felony charge, the false misdemeanor fingerprint cards were replaced by false felony fingerprint cards, and false accusatory instruments (Exhibits B and C) charging plaintiffs with the felony were made and filed by Wooton in the Town of Woodstock Justice Court. Wooton, Lane and Brewster told Ronald Lipton, after they had measured the shotgun at 18 ½ inches, "We couldn't care less whether it is legal or not, you and your kid are going to jail."

30. Plaintiffs were chained to the wall at the police station from approximately 5 p.m. until after midnight, during which time they were constantly taunted by Wooton, Lane and Brewster who refused to loosen plaintiffs' handcuffs which were cutting off circulation and causing Ronald Lipton chest pain.

31. As a result of the false accusatory instruments being made and filed by Wooton as aforesaid, plaintiffs were arraigned before the Judge of the Town of Woodstock Justice Court, who, after conferring with Wooton, Lane and Brewster, set bail at $20,000.00 for Ronald Lipton and $10,000.00 for Brett Lipton.

32. As a result of the accusatory instruments being made and filed by Wooton as aforesaid, plaintiffs, who were not able to post the bail, were incarcerated and forced to endure debilitating conditions of confinement, including continuous solitary confinement, locked down 23 hours per day, until February 17, 1999, when the People failed to go forward with a preliminary hearing and plaintiffs were released on their own recognizance by the Town of Woodstock Justice Court.

Case 1:00-cv-00319-GLS-RFT    Document 54-11    Filed 07/19/04    Page 10 of 14

33. As a result of the false accusatory instruments being made and filed by Wooton as aforesaid, plaintiffs were required to appear in the Town of Woodstock Justice Court on February 17, March 17, April 28 and May 26, 1999, to defend the charges against them.

34. On May 26, 1999, the aforesaid charges against plaintiffs of criminal possession of a weapon in the third degree were reduced to criminal possession of a weapon in the fourth degree and were thereupon dismissed by the Town of Woodstock Justice Court. Attached hereto as Exhibit D are the Town of Woodstock Justice Court Certificates of Disposition of said charges.

35. All of the foregoing occurred without any fault or provocation on the part of plaintiffs who were wholly innocent of the charges filed against them and of any other unlawful or wrongful conduct.

### A. As Against Defendants Wooton, Lane, Brewster, Hulbert and Doe

36. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "35" as though fully set forth herein.

37. The acts, conduct and behavior of Wooton, Lane, Brewster, Hulbert and Doe were performed knowingly, intentionally, maliciously, with callous and depraved indifference to the rights of plaintiffs and in retaliation for plaintiff Ronald Lipton's protected speech. By reason of the foregoing plaintiffs are entitled to awards of both compensatory and punitive damages.

38. By virtue of Wooton's, Lane's, Brewster's, Hulbert's and Does' conduct as

described herein, plaintiffs were deprived of their freedom and suffered shame, humiliation, indignity, mental anguish, emotional distress and other psychological and physical injuries.

39. By virtue of Wooton's, Lane's, Brewster's, Hulbert's and Doe's conduct as described herein, plaintiffs' were denied the following rights, privileges and immunities secured to them by the Constitution of the United States:

    (a) the right to due process of law secured by the Fourteenth Amendment;

    (b) the right not to be arrested without probable cause secured by the Fourth Amendment;

    (c) the right not to be arrested and held through the use of excessive force secured by the Fourth and Fourteenth Amendments;

    (d) the right against unreasonable searches and seizures secured by the Fourth Amendment;

    (e) the right against malicious prosecution secured by the Fourth Amendment;

    (f) the right to a fair trial secured by the Sixth Amendment;

    (g) the right to freedom of speech secured by the First Amendment; and

    (h) the right to equal protection of the law guaranteed by the Fourteenth Amendment.

40. By reason of the foregoing, plaintiffs are entitled to awards of compensatory damages against Wooton, Lane, Brewster, Hulbert and Doe.

41. By reason of the foregoing, and because Wooton, Lane, Brewster, Hulbert and Doe acted with wanton and unconscionable disregard for plaintiffs' rights, privileges, welfare and well-being, plaintiffs are entitled to awards of punitive damages against Wooton, Lane, Brewster, Hulbert and Doe.

### B. As Against Defendant Town of Woodstock

42. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "41" as though fully set forth herein.

43. The acts, conduct and behavior of Wooton, Lane and Brewster were, in part, the result of the failure of the defendant Town of Woodstock to adequately train its police officers in the proper manner of determining whether there is probable cause to arrest an individual without a warrant.

44. The acts, conduct and behavior of Wooton, Lane and Brewster were, in part, the result of the failure of the defendant Town of Woodstock to adequately and properly screen and supervise its police officers to make sure that there were no officers serving in the Town of Woodstock Police Department who were of mean or malicious temperaments.

45. The Town of Woodstock's failures to train, screen and/or supervise, as aforesaid, constituted policies of deliberative indifference to the rights of plaintiffs and such policies caused the aforementioned constitutional violations, injuries and damages sustained by plaintiffs at the hands of Wooton, Lane and Brewster.

46. By reason of the foregoing, plaintiffs are entitled to awards of compensatory

damages against the Town of Woodstock.

### C. As Against Defendant Town of Saugerties

47. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "46" as though fully set forth herein.

48. The acts, conduct and behavior of Hulbert and Doe were, in part, the result of the failure of the defendant Town of Saugerties to adequately train its police officers in the proper manner of determining whether there is probable cause to arrest an individual without a warrant.

49. The acts, conduct and behavior of Hulbert and Doe were, in part, the result of the failure of the defendant Town of Saugerties to adequately and properly screen and supervise its police officers to make sure that there were no officers serving in the Town of Woodstock Police Department who were of mean or malicious temperaments.

50. The Town of Saugerties' failures to train, screen and/or supervise, as aforesaid, constituted policies of deliberative indifference to the rights of plaintiffs and such policies caused the aforementioned constitutional violations, injuries and damages sustained by plaintiffs at the hands of Hulbert and Doe.

51. By reason of the foregoing, plaintiffs are entitled to awards of compensatory damages against the Town of Saugerties.

WHEREFORE, plaintiff asks this Court to:

A. Issue an order adjudging and declaring that the defendants' conduct, acts and/or omissions violated plaintiffs' rights under the First, Fourth, Sixth and

Fourteenth Amendments of the United States Constitution;

      B. Award plaintiffs compensatory damages against the defendants in amounts to be determined by the Court;

      C. Award plaintiffs punitive damages against the defendants Wooton, Lane, Brewster, Hulbert and Doe in amounts to be determined by the Court;

      D. Award plaintiffs the costs and disbursements of this action;

      E. Award plaintiffs reasonable attorney fees; and

      F. Grant plaintiffs such other and further relief as to this Court may seem just and proper.

Dated: June 5, 2001

                              ROBERT N. ISSEKS, ESQ.
                              Bar Code No. 507486
                              6 North Street
                              Middletown, New York 10940
                              (914) 344-4322

                              ALEX SMITH, ESQ.
                              Bar Code No. 509022
                              41 Dolson Avenue
                              Middletown, New York 10940
                              (914) 343-2101

                              Attorneys for Plaintiffs