UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

RONALD LIPTON and BRETT LIPTON,

                               Plaintiffs,

                                                     00 CIV 319 (HGM)(RFT)

       -against-

JOHN WOOTON, KEVIN LANE, EDWIN BREWSTER,
TOWN OF WOODSTOCK, TOWN OF SAUGERTIES,
GREG HULBERT, Chief of the Town of Saugerties
Police Department, and JOHN DOE, an unidentified
Town of Saugerties Police Officer,

                               Defendants.

--------------------------------------------------------------------x


=====================================================

## DEFENDANTS' MEMORANDUM OF LAW

=====================================================


                                 McCABE & MACK LLP
                                 David L. Posner, Esq.
                                 *Attorneys for Defendants*
                                 63 Washington Street
                                 P.O. Box 509
                                 Poughkeepsie, NY 12602-0509
                                 Tel: (845) 486-6800

# TABLE OF CONTENTS

**PAGE**

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Facts and General Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**POINT I**

Plaintiffs' arrest on the trespass charge was with
probable cause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**POINT II**

There was no malicious prosecution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**POINT III**

Qualified immunity applies to the individual defendants
with respect to the trespass arrest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**POINT IV**

The issue of punitive damages should be bifurcated . . . . . . . . . . . . . . . . . . 17

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## PRELIMINARY STATEMENT

This brief is submitted in support of defendants' motion for summary judgment dismissing so much of plaintiffs' amended complaint that claims they were falsely arrested in the Town of Woodstock on trespass charges lodged in the neighboring Town of Saugerties and that they were maliciously prosecuted on weapons charges filed against them in Woodstock after their initial trespass arrest. (Plaintiff has settled all claims against the co-defendants Town of Saugerties and its Chief, Gregory Hulbert).

## FACTS AND GENERAL DISCUSSION

On February 14, 1999 plaintiffs came through the Town of Woodstock on their way to find the residence of  Paula Wrolsen, a former girlfriend of  Ronald Lipton who had left him and the home in which they had lived with Brett Lipton in Newburgh, New York approximately ten days earlier.  (Wooton EBT, p. 7; R. Lipton EBT, p. 51; B. Lipton EBT, pp. 54-60; Hulbert EBT, p. 19).

Their first encounter with any defendant was to solicit directions to the Wrolsen residence from John Wooton, a part-time Woodstock officer who, at the time he was approached by Ronald Lipton, was at a vehicle stop on the Glasgow Turnpike, in the Town of Woodstock.  (Wooton EBT, pp. 5-6).   Wooton did not know this location and radioed his dispatcher for help and was thereafter able to give the Liptons directions.  (George France affidavit).  Up until that time Wooton had never heard of the Liptons or the Wrolsens and was unaware that James

1

Wrolsen, one of Paula's brothers, was a part-time officer in the Town of Saugerties. (Wooton EBT, pp. 8-9). The Wrolsen name was similarly unknown to Kevin Lane and Edwin Brewster. (Brewster EBT, p. 8; Lane EBT, p. 5).

Woodstock and Saugerties are neighboring Towns and as a matter of course while on patrol the radio in Wooton's police car can monitor the Saugerties police department's dispatches as well as those of his own department. (France affidavit) While on continuing patrol after his initial meeting with Mr. Lipton he heard a dispatcher from Saugerties send a vehicle to the Wrolsens' on a trespass complaint. He suspected it might involve the people to whom he had earlier given directions and asked his dispatcher for further details as he had just observed the Liptons' vehicle at a Mobil gas station in the Town of Woodstock. (Wooton EBT, pp. 14-22). He parked his vehicle across the road and awaited further information. Shortly thereafter he was advised that the Saugerties police department had a signed complaint for a trespass against the Liptons and its request that Woodstock arrest them. (Amended complaint ¶18; France affidavit; Wooton EBT, pp. 32-33; Hulbert EBT, p. 34; Lane EBT, pp. 13-14; Exhibit "A", trespass complaint and Saugerties police report). Thereafter, Wooton and Lane, who had previously joined Wooton at the location across the street from the gas station  proceeded to the Liptons and placed them both under arrest. (Wooton EBT, pp. 33-34; Lane EBT, pp. 20-21). It was at this time that a shotgun was observed. However, the arrest on the weapons charges is not the subject of this motion and will not be discussed

2

in detail except as it relates to the malicious prosecution claim.  (Lane EBT, pp. 16-17).

After the Liptons were brought to the station on the Saugerties trespass charge the weapon was measured and the erroneous conclusion reached that it was of an illegally short length.  As a result, weapons charges were prepared and plaintiffs were brought before Judge Husted of the Woodstock Justice Court, arraigned and remanded to the Ulster County Jail.  (Wooton EBT, pp. 42-46; Brewster EBT, pp. 22-24; Exhibits "B", weapons complaints and Woodstock police report; Exhibit "C", securing orders).

The following day the mismeasurement of the gun was discovered.   Once this occurred defendant Brewster, then part-time chief of the department, now a detective sergeant with the Ulster County Sheriff's Department, requested that the District Attorney's office be notified.  Monday, February 15, 1999 was  President's Day.  Information concerning who made the call and who received it on this holiday are not known.  Wooton learned of the error when called at home by Sergeant Van deBogart. He came to the station and learned the chief had already requested the District Attorney's office be notified.  (Wooton affidavit; Brewster EBT, pp. 29-31).

On February 17, Wooton appeared at the Woodstock Justice Court before it convened and met ADA Peter Matera.  He relayed to him the mistaken measurement and was advised by Matera that the preliminary hearing would be canceled as a result.  When he left court he assumed, correctly, that the Liptons

3

would be immediately released. He was never contacted again by ADA Matera with respect to these charges.  (Wooton affidavit; Matera affidavit; see Exhibit "C", "release information" on securing orders; Exhibit "G" - Court Adjournment Record.)

Despite their release on the Woodstock charges both plaintiffs  were immediately taken into custody by the New York State Police on charges filed in the Town of Newburgh and transported to Orange County.  These charges had been lodged against them by Paula Wrolsen, the woman they were looking for in Saugerties. (Exhibit "D"; Paula Wrolsen supporting deposition and criminal complaints).

Also, arrest warrants for plaintiffs based upon Paula Wrolsen's complaint had been filed by the state police at the Ulster County Jail on Monday the 15th and thus from then until their release on the Woodstock charges on the 17th they were effectively held on both sets of charges.  (Exhibit "E").  Ron Lipton remained in custody on Paula Wrolsen's charges until Friday night February 19 when he posted bail at the Orange County jail.  (R. Lipton EBT, pp. 33-34, 38-42).  Although he did not know the details, he had learned of these charges while still in the Ulster County jail prior to his release on the Woodstock charges. (R. Lipton EBT, pp. 160-163). Brett Lipton was in custody until Thursday February 18th.  (B. Lipton EBT, pp. 214-220).

The proceedings in the Woodstock Justice Court were adjourned after the Liptons were released on consent and for all purposes first to March 17, then to

4

April 28 and finally until May 26 when Assistant District Attorney Matera moved to reduce the charges to misdemeanors and then for their dismissal.  These applications were granted.  (Matera affidavit; Exhibit "G".)

It is defendants' position that the arrest on the Town of Saugerties trespass charge did not violate the Fourth Amendment.  The information defendants received from the Saugerties police department concerning the signed complaint of John Wrolsen provided them with probable cause, notwithstanding any claim that their actions violated state procedural limits on police officers' powers to arrest.  It is also submitted that the malicious prosecution claim arising out of the weapons charges must be dismissed because plaintiffs cannot establish malice on defendants' part in that corrective information was promptly provided to the District Attorney resulting in their release from custody prior to the scheduled preliminary hearing.  The fact that the "prosecution" continued, in a technical sense, until the dismissal in May cannot be attributed to the defendants who took reasonable steps within their power to bring the proceeding to a halt.

**POINT I**

**PLAINTIFFS' ARREST ON THE TRESPASS
CHARGE WAS WITH PROBABLE CAUSE**

Probable cause existed for plaintiffs' arrest by Woodstock Officers Wooton and Lane on the Saugerties trespass charge.  Any claims plaintiffs may make that this arrest violated provisions of New York's Criminal Procedure Law do not affect

5

the Fourth Amendment probable cause analysis.  Since plaintiffs have not pursued

state law claims their false arrest causes of action arising from this initial arrest

must only be analyzed under the Fourth Amendment.  (See amended complaint).

**A)      Probable Cause**

In affecting plaintiffs' arrest defendants relied upon information from and the

request of the Saugerties police department.  They were advised a complaint had

been signed before they approached plaintiffs.  (See trespass complaint of John

Wrolsen; affidavit of George France; Wooton EBT, pp. 32-33; Lane EBT, pp. 13-

14; amended complaint ¶¶17-18; Hulbert EBT, p. 34; Saugerties police reports,

Exhibit "A").  As a result, the "collective or imputed knowledge" doctrine, often

called the "fellow officer" rule, applies and so long as the Saugerties police had

sufficient probable cause to support an arrest the Woodstock officers acted within

the bounds of the Fourth Amendment.  See, e.g., USA v. Colon, 250 F3d 130, 135

(2d Cir., 2001); Whitely v. Warden, 401 U.S. 560 (1971).  The presence of

probable cause is a complete defense to a false arrest claim.  Bernard v. U.S., 25

F.3d 98, 102 (2d Cir., 1994); Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir.,

2001).

As USA v. Colon instructs, the collective knowledge doctrine takes into

consideration the reasonable needs of law enforcement given the mobile nature of

society and size of many police departments thereby permitting an officer without

personal knowledge of the basis for probable cause to rely on information provided

6

to him/her by appropriate law enforcement personnel who do have such information.  It can come from within the same department or from an agency different than the one employing the officer who actually makes the arrest.  Id. at 135; see also, People v. Rosario, 78 N.Y.2d 583, 588, 578, N.Y.S.2d 454, 456-57 (1991) cited favorably by the Second Circuit in Colon;  Whitely v. Warden, supra at 564-568 holding a radio bulletin from one police department indicating a warrant exists gives another department probable cause to arrest even thought it knows nothing of the actual basis for the arrest.

There thus can be no doubt that the arresting officers in Woodstock acted within the Fourth Amendment on the information provided by Saugerties so long as this information gave the Saugerties police sufficient data to satisfy that Amendment's probable cause criteria.

**Saugerties had Probable Cause**

Probable cause exists under the Fourth Amendment when the arresting officer has

> knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.

Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir., 1995), *cert. denied*, ___ U.S. ___, 116 S.Ct. 1676 (1996); O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir., 1993).

7

Police officers need not have personal knowledge of the crime in order to have probable cause as they may rely upon statements of witnesses and victims. See, e.g. <u>Lee v. Sandberg</u>, 136 F3d 94, 102-103 (2d Cir., 1997); <u>Singer</u>, supra 63 F.3d at 119 ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity"); <u>Bernard v. U.S.</u>, 25 F.3d at 103; <u>Augustine v. Reid</u>, 882 F.Supp. 50, 53 (EDNY) *aff'd. mem.* 99 F.3d 402 (2d Cir. 1995); <u>Miloslausky v. AES Engineering Society, Inc.</u>, 808 F.Supp 351 355 (SDNY 1992, *aff'd.* 993 F2d 1534 (2d Cir.) *cert. denied* ___ U.S. ___, 114 S.Ct. 68 (1993). ("It is well established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth."). Here the Saugerties police had a signed complaint from John Wrolsen accusing the Liptons of trespass (<u>Exhibit "A"</u>) which was executed under the penalties imposed by Penal Law §210.45 adding to its bona fides and the police officers' ability to rely upon it. <u>Fulton v. Robinson</u>, 289 F.3d 188 (2d Cir., 2002). Therefore, sufficient information existed within the Saugerties police department to establish probable cause under the Fourth Amendment and upon relaying that to Woodstock, its officers, under the common knowledge doctrine of <u>USA v. Colon</u>, had probable cause as well.

As a result defendants Wooton and Lane had probable cause to place

8

Ronald and Brett Lipton under arrest for the trespass charge filed by Mr. Wrolsen

in Saugerties and plaintiffs' claims that their Fourth Amendment rights were violated

must be dismissed against them, as well as co-defendant Brewster, who had

nothing to do with this arrest, and the Town of Woodstock as well.

**B)    Failing to adhere to NY CPL restrictions on the power to arrest does not violate the probable cause requirement of the Fourth Amendment**

An arrest which violates state law does not necessarily violate the Fourth

Amendment requirement  that probable cause exist before an arrest be made.  The

question always remains whether the police conduct violated federal, not state, law.

Tucker v. County of Jefferson, 110 F.Supp.2d 117, 120 (NDNY 2000).  In Tucker

the officers arrested the plaintiff in violation of CPL §120.70(2)(b) governing the

geographical limits on arrest warrants but this did not defeat the probable cause

created by the warrant and the plaintiffs' federal civil rights claim was dismissed.

In Hotaling v. LaPlante, 167 F.Supp.2d 517 (NDNY 2001), Judge Hurd

reached the same conclusion as did Judge McAvoy in Tucker and ruled that an

arrest in violation of CPL §140.10(1)(a) which prohibits a police officer in New York

from making an arrest for a violation that did not occur in his presence does not

violate the Fourth Amendment.  He noted that an argument under state law was not

germane because "there is no requirement under the Fourth Amendment that a

police officer personally witness the conduct upon which he or she relies to

establish the existence of probable cause".  Id at 522.

9

In <u>Pasiewicz v. Lake Forest Preserve District</u>, 270 F3d 520, 524-527 (7th Cir., 2001) a Fourth Amendment false arrest suit was dismissed because eyewitness identification of the plaintiff as the subject of a public indecency complaint provided the arresting officers with probable cause. The fact that they made the arrest beyond the state defined geographical boundaries of their jurisdiction was not relevant as "The federal government is not the enforcer of state law". <u>Id</u>. at 526.

Thus while plaintiffs complain that they were arrested on a trespass violation without a warrant by officers who did not witness the incident (CPL §140.10(1)(a)) and by officers who exceeded their geographical boundaries (CPL §140(2)(a)), the Fourth Amendment does not limit police officers' powers in this fashion, as its concern is probable cause.  (see amended complaint, ¶22).  That New York State chooses to place certain procedural limits on its officers does not provide a basis for a federal claim under 42 U.S.C. §1983 premised upon a Fourth Amendment violation.  The constitution must be uniformly applied throughout the country and not subject to differing interpretations dependent upon each state's own rules governing police activity.  Redress for violations of state law must either be brought in state court or as separate claims in federal court under supplementary jurisdiction, 28 U.S.C. §1367.  Clearly not every violation of state  law or rules becomes a constitutional claim merely because the person sued is a municipal employee. <u>Baker v. McCollan</u>, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695-96 (1979); <u>Paul v.</u>

10

<u>Davis</u>, 424 U.S. 693, 96 S.Ct. 1155 (1976); <u>Parratt v. Taylor</u>, 451 U.S. 527, 101

S.Ct. 1908 (1981); <u>Zahra v. Town of Southold</u>, 48 F3d 674, 682 (2d Cir., 1995).

**C)     The alleged improper motive is not relevant**

        The amended complaint alleges Saugerties Chief Hulbert requested

Woodstock arrest the Liptons as revenge for Ron Liptons "exposing" the parents of

John Wrolsen, Paula's brother and a part-time Saugerties officer, as anti-Semitic.

This, of course, is denied as Hulbert indicates he had no contact with Woodstock

on February 14 after his meetings with Mr. Lipton.  (Hulbert EBT, p. 21; see also

Wooton EBT, p. 9; Brewster EBT, p. 21; Lane EBT, p. 5).  More importantly it is

not relevant as subjective motive is not a consideration in evaluating a police

officer's compliance with the Fourth Amendment.  See e.g., <u>Maryland v. Macon</u>,

472 U.S. 463, 470-71, 105 S.Ct. 2778 (1985) ("whether a Fourth Amendment

violation has occurred turns on an objective assessment of the officer's actions in

light of the facts and circumstances confronting him at the time and not on the

officer's actual state of mind at the time the challenged action was taken."  "{A}

wholly objective authorization test "has been adopted meaning that" so long as the

police are doing no more than they are legally permitted and objective authorized to

do "their action are constitutional."  <u>Simms v. Albion</u>, 115 F.3d 1098, 1108 (2d Cir.,

1997) *citing*  <u>U.S. v. Scopo</u>, 19 F.3d 777, 783-84 (2d Cir., 1994); <u>Curley v. Village</u>

<u>of Suffern</u>, <u>supra</u> 285 F.3d at 73 ("because defendants had probable cause to

arrest plaintiff, an inquiry into the underlying motive for the arrest need not be

11

undertaken.")

Because the Fourth Amendment only focuses on the objective correctness of the probable cause determination plaintiffs' allegation that the Lane and Wooton were inspired to retaliate against them for what Ronald Lipton told Saugerties Chief Hulbert about the Wrolsen family is irrelevant.  John Wrolsen's written complaint against the Liptons provided probable cause for their arrest by the Saugerties police.  If the charges were brought maliciously the Liptons' remedy is against Mr. Wrolsen not the police who relied upon his signature on the accusatory instrument made under the statutory penalties provided in Penal Law §210.45. (Exhibit "A").

Since plaintiffs have made no claim under state law their arguments that it was violated are not relevant.  Their initial arrest on the trespass charge was with probable cause under the Fourth Amendment as it was based upon the victim's signed complaint.  Plaintiffs' claims based upon this arrest must be dismissed as to all defendants.

### POINT II

### THERE WAS NO MALICIOUS PROSECUTION

On Monday, February 15, 1999, the day after plaintiffs' arrest on the weapons charge Edwin Brewster's learned that the shotgun was of a legal length. As a result, he directed that the District Attorney's office be notified.   It was President's Day, and it is not known to whom the information was given but apparently it did not immediately reach the Assistant District Attorney assigned to

12

the Woodstock Justice Court.  Mr. Matera learned of the error in advance of the

Court's Wednesday session when he met Wooton at court to prepare, he thought,

for a preliminary hearing on the charges.

      Wooton told Matera the shotgun's length was not too short and as a result

the preliminary hearing was canceled and the Liptons immediately released from

custody on these charges.   Defendants never took any further action with respect

to the charges after realizing the weapon was legal.  (Wooton and Matera

affidavits).  The charges were formally dismissed in May.   Despite being released

from custody on the Woodstock charges plaintiff were not free as they were

immediately arrested by the New York State Police on felony charge arising in the

Town of Newburgh.  (Exhibit "D").  In fact, warrants had been lodged against them

at the Ulster County Jail on Monday, February 15 effectively placing them in

custody on both sets of charges from then until their release from the Woodstock

charges on Wednesday the 17th).  (Exhibit "E").  Ron Lipton remained in custody

for an additional two days and Brett Lipton one additional day.

      Under this factual scenario plaintiffs' §1983 malicious prosecution claim

cannot proceed.

      The elements of a malicious prosecution cause of action are well known.

They are: (1) the commencement or continuation of a criminal proceeding against

the plaintiff; (2) favorable termination of that proceeding; (3) lack of probable cause

for the proceeding; and (4) actual malice.  White v. Frank, 855 F.2d 956, 961 n.5

(2d Cir., 1988); <u>Raysor v. Port Authority of New York and New Jersey</u>, 768 F.2d 34, 39 (2d Cir., 1985); *cert. denied*, 475 U.S. 1027, 106 S.Ct. 1227 (1986).

With respect to the malice requirement it is not necessary to demonstrate a defendant was motivated by spite or hatred. However, a plaintiff must have proof that the prior prosecution was continued due to "a wrong or improper motive, something other than a desire to see the ends of justice served". <u>Nardelli v. Stamberg</u>, 44 N.Y.2d 500, 406 N.Y.S.2d 443, 445 (1978).

The factual scenario recited above necessitates dismissal of the malicious prosecution claim.

The actions of Brewster on the 15th and Wooton on the 17th dissipate any claim of malice on any defendants' part. Successful steps were taken to derail the prosecution which led to plaintiffs' prompt release from custody. The technical continuation of the case is not chargeable to the defendants as totally independent decisions were made by the prosecuting authorities with respect to the timing of its ultimate disposition. See, e.g., <u>Townes v. City of New York</u>, 176 F.3d 138, 147 (2d Cir., 1999) ("the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment." The Court refers to the examples of decisions by the prosecutor, judge and jury). See also, <u>Barts v. Joyner</u>, 865 F.2d 1187 (11th Cir., 1987), *cert. den.* 493 U.S. 831 (1989).

At the latest, once Wooton told Matera the gun was not too short, and

14

Matera acted on that information to plaintiffs' benefit by securing their release and

canceling the preliminary hearing, proximate cause no longer exists tying

defendants to the continued adjournment of the prosecutions until their dismissal in

May.

      While the presence of malice is often a question of fact for a jury, there is no

basis upon which it could be concluded the criminal prosecutions on the weapons

violations were continued due to "a wanton, reckless or grossly negligent disregard

of plaintiffs' rights, inconsistent with good faith", an often cited standard for malice.

Biener v. City of New York, 47 A.D.2d 520, 362 N.Y.S.2d 563, 567 (2d Dept.,

1975).  For example, in Cox v. County of Suffolk, 827 F.Supp. 935 (EDNY 1993)

the issue of malice was held to raise a question of fact when the record established

reliable exculpatory evidence was known to the police shortly after the plaintiff's

arrest but nonetheless the matter went to the grand jury which returned a true bill.

The indictment was thereafter dismissed by the state court which relied on that

exculpatory evidence to find the charges could not be sustained.  Here, however,

instead of proceeding in the face of their error defendants came promptly forward

and disclosed it which resulted, for all intents and purposes, in the immediate

termination of the criminal proceedings prior to the preliminary hearing.  Exculpatory

information was disclosed rather than withheld. This does not raise a question of

fact and the court can determine plaintiffs cannot establish actual malice thereby

calling for dismissal of the malicious prosecution cause of action.  Their remedies

15

for the erroneous measurement of the weapon are their false arrest claims.

**POINT III**

**QUALIFIED IMMUNITY APPLIES TO THE
INDIVIDUAL DEFENDANTS WITH RESPECT
TO THE TRESPASS ARREST**

Qualified immunity protects a law enforcement official from a civil suit for violation of a plaintiff's federal constitutional rights if "a reasonable police officer would have believed his action to be lawful, in light of clearly established law and the information he possessed". Weyant v. Okst, 101 F.3d 845, 857 (2d Cir., 1999) (quoting Hunter v. Bryant, 502 U.S. 223, 227, 112 S.Ct. 534 (1991); Kelleher v. NY State Trooper Fearon, 90 F.Supp.2d 354, 361 (SDNY 2000). Thus, both Lane and Wooton are entitled to qualified immunity if it was objectively reasonable for them to believe their conduct did not violate plaintiffs' clearly established right, i.e., not to be arrested without probable cause. Id. at 361, *citing* Lennon v. Miller, 66 F.3d 416, 418 (2d Cir., 1995) (*citing* Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034 (1987). And the Supreme Court has recently reiterated that the qualified immunity determination should be made independent of and prior to the trial as it "requires an analysis not susceptible of fusion" with the ultimate factual determination of whether or not there was a Fourth Amendment violation. Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151 (2001).

Here it was objectively reasonable for Wooton and Lane to conclude they

16

had probable cause to place plaintiffs under arrest based upon information they
received from Saugerties that a signed complaint had been received accusing them
of trespass.   While it is well established probable cause must exist for an arrest, it
is equally well established that a complaint from the victim creates probable cause
under the Fourth Amendment and that the "common knowledge" or fellow officer
rule permitted them to act on the information from the Saugerties Police
Department (See Point I).  It was therefore objectively reasonable for these
defendants to arrest plaintiffs.  At a minimum the information provided "arguable
probable cause" which would still entitle them to immunity.  Provost v. City of
Newburgh, 262 F.3d 146, 160 (2d Cir., 2001) (quoting Lee v. Sandberg, 136 F.3d
94 (2d Cri., 1997).  As a result, the claim of false arrest arising under the Fourth
Amendment from the trespass complaint of John Wrolsen must be dismissed.
(Brewster had nothing to do with this arrest .  Also, the Town cannot be  liable for it
under Monell v. New York City Department of Social Services, 436 U.S. 658
(1978).

## POINT IV

## THE ISSUE OF PUNITIVE DAMAGES
## SHOULD BE BIFURCATED

The issue of punitive damages must be bifurcated so that should the Court
permit the jury to determine if such an award is appropriate the amount will only be
established after the initial verdict.  In this fashion evidence of the individual

17

defendants' personal worth need not be admitted during the liability and compensatory damage phase of the case which is a "class of evidence normally not admitted nor discoverable" at that time.  <u>Vasbinder v. Ambach</u>, 926 F.2d 1333, 1344 (2d Cir., 1991).

**CONCLUSION**

For the foregoing reasons the claims against all defendants with respect to the initial arrest on the trespass charge based upon the Fourth Amendment must be dismissed as must the malicious prosecution causes of action.  Also, the issue of punitive damages should be bifurcated from the liability and compensatory damage phase of the trial.

DATED:        Poughkeepsie, New York
              July 3, 2003

                              Yours, etc.

                              McCABE & MACK LLP


                              By: _____
                                    David L. Posner (601389)
                                    *Attorneys for Defendants*
                                    63 Washington Street
                                    P.O. Box 509
                                    Poughkeepsie, NY 12602-0509
                                    Tel: (845) 486-6800

18